Good morning. Philip K. Fife for the appellant. Mindful of the fact that you've already read the briefs, I will not go over them unless you have any particular questions. Rather, I'd like to simply address issues raised in the appellee's brief to the effect that there was no finding or satisfactory proof of an occurrence, and that's propositioned on the basis that since the people who worked on this remodeling project obviously were intending to work on the project, ergo it follows that any harm that resulted from the effective or negligently done work was intentionally done damage and therefore not covered by the policy. That is a stretch of the definition of intent and negligence that goes far beyond that. Whether there was an occurrence was not determined by the district court, right? The district court did not, I don't think, make an express determination that there was an occurrence or that there was no occurrence. Right. The arbitrator's award quite clearly in finding negligence indicates that there was the elements of an occurrence. Well, the arbitrators were not concerned with insurance coverage. No, they were concerned with negligence. They were concerned with negligent damage, which is unintended and unexpected damage done by the subcontractors, damaging the work of other subcontractors and the work of the general contractor, and the unintended damage by the general contractor. Right. So if nobody is determined that there was or was not an occurrence, why should we fiddle with it in the first instance? I think from the evidence that's in the record, including the adoption of the arbitration award's findings by the district court, that it is inescapable that the elements of an occurrence were established. That's because the arbitrator found, as I understand it, that forgetting the damage to his own work, the inadequacy of the contractor's work, damage to other work, including the existing house, which is other property, occurred. Absolutely. Existing house and the work of other subcontractors on the job. The exclusion for coverage for the cost of repairing negligently done work by the insured does not apply where the work was done by subcontractors for the insured, according to the language of the policy. And the contract, the arbitrator did find on this issue, were these other people working on the job employees or subcontractors, that they were subcontractors. Apelli makes the argument that in the trial court, my clients urged that these people were employees. But in the same reference, which is page 46 of the Apelli's excerpts, in that same brief, the contractor was arguing that these people were subcontractors. The arbitrator resolved that on the basis that the people who worked on the job at the request of Rumreich, Inc. were subcontractors. And thus, that exclusion for the cost of repairing work done, the cost of repairing the contractor's own work would not apply if the work, if the damage to that work was caused by some subcontractors.     There are different contexts, and I am curious. I don't want to confuse the offense permits.  I'm a tad bit confused by. All right. I'm a little bit confused by the posture you're taking, because since there's no determination of occurrence, you didn't appeal on that basis. There was an adverse determination on manifestation, which you obviously appeal. Right. But the trial court did not find that there was no occurrence. Well, I understand that, but from your point of view, what are we supposed to do about that? That's out there. You've got to get the other one overturned first. The manifestation issue? I would think. Well, I think the evidence is clear there. If there's an occurrence that didn't manifest itself after the beginning of the policy period, it's not going to do you any good to have an occurrence formally declared. Well, the occurrence is defined as physical damage to tangible property not intended or expected. Negligence, by definition, implies that you neither intended or expected to cause harm. If you intended or expected, then it's intentional harm. And the arbitrator found negligently performed work caused physical damage to tangible property of other subcontractors and of the general contractor. That should constitute an occurrence, regardless of whether or not These are arguments that you're making to us that are utterly irrelevant at this point if you can't get over the manifestation problem. And the district court decided against you on the manifestation problem. If we were to reverse the district court's decision on manifestation, then you can go back before the district court and argue the question of an occurrence. But you're asking us to decide questions that are actually irrelevant to the problem. You've got an adverse finding by the district court on the question of manifestation. So how do you win that one? The way I win that one is the only evidence in the record is that testimony by the homeowners that they began to notice the defects after they moved in in May of 2003, which is after the policy question went into effect. And the fact that the contractor took the position that the house was ready to move in, it certainly negates the suggestion that the contractor thought damages had already occurred, or the construction defects had already become manifest. And the fact that when the case went ready for trial in January of 2005, discoveries tore off, all exhibits had been exchanged according to Superior Court rules, policy still in effect until March 28th of 2005. Those were the damages that were presented to the arbitrator. The parties decided at the last minute, let's submit this to binding arbitration rather than a lengthy jury trial. And the arbitrator heard all the evidence that had been developed in the course of the preparation case, all of which was filed and was in effect, and ruled on that. The judge simply, Judge Rios simply speculated the damages must have become manifest prior to March 28th, 2003. Well, I mean, he may have speculated. On the other hand, he's got the arbitral award in front of him, which identifies the damage. Correct. You know, a lot of sagging of this and that, and sagging and bowing of other things. Your client said he, and particularly his wife, had visited the premises a ton. And the manifestation doesn't have to be to the insured. It can be to other people. That's correct. So when the district court looks at the nature and extent of the damage that occurred, why in your view is it that the court could not conclude that that had to have manifested itself before the insured moved in, just by its very nature? Because there was no dispute or claim between the homeowners and the contractor at all prior to the summer of 2003, leading to the complaint in September of 2003. The policy wouldn't affect March 28th. Well, I don't know that when you actually get into a fight with somebody sheds any light on when something was manifested. Well, I think that if there are defects that are manifested, you would expect there'd be some sort of claim being made, some sort of exchange of complaints about the quality of the work on the defects before that. But the only evidence in the record is that the homeowners began to notice defects after they moved in. And then during the course of the underlying litigation, they began to determine and investigate the reasons and causes of more of the defects, the primary defect being structural issues in the settling of the house. Mr. Fife, you had difficulty asking some questions because of objections from the other side. Did you ever make a proffer to the district court as to anything? Or did you get all the evidence in that you wanted regarding manifestation? I got all the evidence in that I thought I needed at that point. And I anticipated that they might call Kristen Martinez, the wife, and the defense might call Kristen Martinez. And I would have better luck in cross-examination or redirect examination of her getting in, you know, whatever she had observed and when she had observed it. But as the evidence closed out with them offering no evidence to indicate that the manifestation had occurred prior to March 28, 2003, the record was left with the only evidence on that issue, only evidence on that issue being the testimony of Martinez and the peripheral evidence, the fact that the general contractor felt the property was ready to be moved into. And obviously, the reasonable inference from that is he didn't think there was anything wrong with the property and throughout the arbitration, he maintained there was nothing wrong with the property. That's also decided in the arbitrator's award that the contractor took the position there were no defects at all in the property, which is certainly contrary to the proposition that the contractor must have noticed defects prior to March 28, 2003. I think Judge Reel was more focused on the proposition that the policy must only cover negligence, would not cover negligence committed before the policy went into effect, but that's not how the policy is written. It's written to cover damage which becomes manifest after the policy goes into effect. Even if the negligence, which may have caused that damage to later become manifest, occurred before the policy went into effect, that is not what the ISO CGL policy provides. And that's really, I think, the only way a contractor would, as a license has lost its original insurer, can resume coverage. If the contractor cannot get any coverage for anything that went before, then they're really in a real pickle. And the ISO CGL policy is written to say the triggering point is a manifestation after the policy goes into effect, not when the underlying negligence might have been, just as an example, this is not in the record, but one of the damages that we found is a wallboard installed that had driven a nail through the wallboard, puncturing an unpressurized water pipe. No harm at all because the water pressure's off. But later after they move in and turn the water pressure on, that little hole starts leaking water into the walls, down the basement, and that was the basis for the development of the mold. But that's not the kind of damage that would have become manifest at the time. He's simply framing in a wallboard and doesn't hit the stud that he was probably aiming for, but he finds it punching a hole through a pressurized water pipe, which at that time had no water pressure in it. That damage becomes manifest when you turn the water pressure on, the leakage develops, eventually the mold develops, and eventually the odor of the mold develops and you find you've got mold. But those are the kinds of things that became manifest after the homeowners moved back into the property. And the only evidence, and I don't think there's any basis for the judge's speculation that it must have become manifest before that, the only evidence is that the issues became manifest after the homeowners moved in. Actually, there's no indication in the record of exactly what the damage was. Do we assume that it's the damage that was found by the arbitrator? I think we have to. I mean, that's what we do. And is all of that damage covered? All the damages that he found were. He did not, for example, make a finding of the cost of repairing damage done to the cost of repairing the contractor's own work as a result of the contractor's own negligence. He did not make that finding. He specifically says there's no point in making that finding because the damage that he had found added up to more than it cost to tear the house down and rebuild it. And he could not ever award more than the cost of tearing the house down. He wasn't purporting to say what was covered and what wasn't covered. He was just finding what damages were caused. Yes, he was finding what damages were caused. And clearly, the CGL policy does cover damage done to work other than the work or property of the negligent actor. Right. What he did is write a finding that got him out of or would get you out of some of the defenses that insurance companies typically bring in these cases. Exactly. He knew what he was doing. Yes, he was an experienced construction defect defense lawyer. I'm sure he could recite the CGL policy from memory. And so he was shaping his findings to the point that, what is the point of finding damages over here when I know they're never going to be covered by a CGL policy? I'm going to find damages that would be covered and see what they add up to. When they add up to more than the cost of repairing the house, he stopped. What was the point of going any further? Okay, you better save a little time. Eleven seconds. Mr. Downey. Good morning. May it please the Court, my name is Tom Downey. I represent Lincoln General Insurance Company, and we are the defendant in the underlying case and the appellee here. The plaintiffs and the appellant have taken the position from the beginning of this case that the only item they need to prevail in the coverage case is the arbitration award itself, and that is a flawed concept. They have judgment creditors, and the law requires and sets forth a procedure for judgment creditors to come forward after they have an actual judgment and pursue under 11-580, which is the statute that allows for this, pursue insurance coverage. But there's a threshold requirement that the judgment creditor must prove that that arbitration award embodies a covered loss, and that's what the trial court concluded that the plaintiff failed to do. They did not show that that arbitration award included a covered loss. Well, the difficulty is that when the plaintiff's counsel started down that path, asking for or trying to elicit from his client, when what happened when the district court sustained an irrelevance objection. And I don't see how you can do that and then turn around and say, oh, well, I find it incredible when he says that it didn't manifest until after he got into the house. That issue can be traced back to the way the plaintiffs framed the underlying trial. Plaintiffs specifically requested and rebutted and challenged our suggestion that the trial consist of issues that would allow the plaintiff to demonstrate manifestation, first manifestation. Plaintiff brought a motion in limine that precluded both parties from engaging in evidence that related to the specific finding of the arbitration award, including property damage, occurrence, things of that nature. Because the arbitration award expressly does not include that. Sure, there is a statement with respect to what the arbitrator believes that the remedy and damages should be. But the parties agreed in advance that that arbitration award would not bind on the coverage issues. It was agreed. So by suggesting to the trial court that all the plaintiffs needed was this arbitration award and no party should be enabled to go into the specific findings behind that arbitration award, plaintiffs tied their own hands at trial. There's still a problem here that you've argued that they were not covered by the CGL policy. Because the policy doesn't go into effect until the contractor is sort of well along on the project. And I think they have shown as of what, it was March of the year? Correct. And the Martinez's go on the stand and are asked when they first noticed things and the district court cuts them off. Every question is objected to. The objection is sustained by the district court. He doesn't allow them to answer the question. And then, in the end, in his findings, he says, I find that the Martinez's were incredible on this point, on a point on which they were not allowed to testify. Well, I think I heard that. I don't see how that problem relates to the question as to what the arbitrator's award did or didn't. I think I agree that the arbitrator's award is a little nebulous and would not be, you know, utterly, completely conclusive on the district court here. But these folks were not even allowed to testify as to what they saw and when they saw it. Well, I think that's in part due to the way the case was framed going into trial. But I also think counsel mentioned earlier in his comments that he admitted in court all the evidence he needed to, to show property damage first manifesting during our policy period. So if that's the case, then there is no prejudice because he just admitted he had all his evidence in. He did. What's your evidence? Well, I don't have the burden to show. I know you don't, but he says he's carried his burden. He had testimony of the people that when they moved in, they started smelling mold, and that led to further investigation, and that led to an arbitrator at least saying the whole doggone house ought to be torn down. What's your evidence as to, regarding manifestation, if any, that they were incorrect, that they lied or whatever? I mean, Judge Reimer here said, what about the arbitrator's own award, own decision? You know, what do you have? What do you have to show manifestation, if anything? It's not your burden, I understand, but is there anything to rebut his? Well, if the trial court was entertaining evidence on manifestation, if this was a different case, not our case. Our case is very tailored. It's tailored by the arbitration award, and it's tailored by the motions eliminating advance of trial. If we were going to proceed on a manifestation, first manifestation case. Well, that's why they lost. That's right. And if that was the case, then we would get into what essentially is a retrial of a construction defect case, exactly what the plaintiffs didn't want to happen. I just guess I don't understand that. You keep saying that the motions eliminate sort of how structured the case, but the only thing in this case was manifestation. Well, that's the only thing the court got to was manifestation. But actually, in order to prove coverage, you'd have to go through the requirements, the basic requirements of general liability policy. You would have to. I'm sorry. No, I'm sorry. I interrupted your answer. My fault. Go ahead. Well, I was just pointing out that, as Justice noted earlier, the focus was on first manifestation, but the requirements for coverage do include showing that it was an occurrence that led to that first manifestation. Well, I know, but if you don't meet one of the requirements, you're out on your tail. You're absolutely right. All right. So the district court said, well, I don't believe him when he says he didn't notice anything until after he moved back into the house, which is not a surprising finding, given the fact that he didn't let him testify to what he saw when. Well, he is also he does have before him the documentary evidence of what occurred in the underlying arbitration. He has the arbitration briefs. He has a lot of information about the context in which this testimony is coming from. So it was not made in a vacuum, and he does have the benefit of understanding that plaintiff's case is based on the arbitration award and plaintiff's now attempting to get behind the arbitration award with his testimony of his own client, and it was to his discretion to decide whether that evidence is sufficient to meet the burden on first manifestation. He concludes it was not, and he concludes that plaintiff failed to meet its threshold burden of showing that that arbitration award included a covered loss, and they failed to meet their burden of showing that there was first manifestation damage awarded in that arbitration award that was issued. And you think it's perfectly okay to do that, despite having cut the plaintiff off at the pass with a relevance objection? Well, in the context in which that objection was made, yes. Now, that does not preclude the plaintiff from presenting other evidence if he had it, additional documentary evidence that was in the record already. I just don't understand that, I guess. He tried to elicit from the plaintiff. When he saw mold, when he saw other defects that the arbitrator found, I mean, what's irrelevant about that? Well, again, it's in the context of the case in which the examination is being made. You keep saying that, but what context are we talking about? The context of the plaintiff presenting evidence of first manifestation of property damage during the policy period, in line with plaintiff's own position in the case, which was plaintiff themselves suggested in advance of trial that that information was irrelevant. But what's confusing about all of this, counsel, is if you, whether you, the two of you got together and agreed or filed a motion in limine or led the district court to believe that this evidence was irrelevant, that's the basis on which the district court decided it. So what you're telling us was irrelevant at the time of trial has now become relevant because that is the only basis on which we can review this decision. The district court said they didn't present any evidence of manifestation. That makes it relevant because that's the only basis on which we can decide this case. How can it be irrelevant and be relevant at the same time? There's a contradiction here. The trial court's decision, the written decision in the court, or from the court, sets forth that plaintiff's evidence was insufficient to meet its burden. And it's in part due to, again, the arbitration award. But he also had before him documentary evidence submitted by the plaintiff related to the construction defect proceedings that led to the arbitration. And he cut off all oral testimony as to manifestation. Well, that's an interpretation of the record, Your Honor. I wouldn't agree that he cut off all property damage evidence submitted by the plaintiff. Again, the plaintiff himself conceded that he did admit evidence of property damage. Unfortunately, it was not sufficient to meet the burden of first manifestation during the policy period. And that's what the court was entitled to conclude based on the evidence beforehand. And if plaintiff decided to rest based on the court granting relevance objections, that didn't preclude him from presenting other evidence. Your other response was, as I understand it, and believe me, I'm trying to work my way through this, was the answer to the question here today. What other evidence would you have presented? And as I understand, Mr. Fife, I've got all the evidence in regarding manifestation that I wanted. Correct? I'm sorry, Your Honor, I didn't fully understand. Okay. As I understood, and Mr. Fife's got 11 seconds to say yes or no when he walks up here again, that basically he was satisfied with the evidence he got in regarding the issue of manifestation. Correct? Yes. All right. Then I asked you, what other evidence do you have? And you're saying basically the damage that the arbitrator had. You didn't answer it directly right away. What other evidence do you have to rebut Mr. Martinez's testimony regarding manifestation? Well, we didn't present evidence on that point in trial, Your Honor. So you're asking about what was presented at trial or outside the scope of trial? Well, I'm asking what did you present at trial? Once again, if anything, what evidence do you have to rebut his evidence of manifestation, that they didn't notice it until they moved into the house? That's what he says. I've got all the evidence I wanted right then and there. What evidence do you have to rebut that testimony? We did not present any evidence. Can I just rephrase his question a little bit? What evidence supports the district court's determination that the evidence was insufficient, whether you presented it or he presented it? Thank you. All right. I understand. The district court was interpreting plaintiff's client's testimony in the context of the construction defect case, the underlying litigation. And so he's evaluating plaintiff's client, the homeowner, in the context of the entire construction defect litigation, which would include experts. It would include lawyers. It would include briefs filed with the arbitration award or arbitration proceeding. The court had all of that material in front of it. It did not have testimony other than Mr. Martinez, and it's evaluating all of the documentary evidence presented in the context, which is normal practice when one court is asked to go back and look at the proceeding that occurred below it in the underlying case. What in there shows when the damage was manifest? Well, none of that evidence directly shows exactly when manifestation occurred. That's part of the problem in this case. That's the issue that's plaintiff's burden to show first manifestation and when it was. He cried and he was cut off. Well, that's one interpretation. But if you look at the context of the case and the way the plaintiffs framed the case, that's precisely what would likely happen. I'm looking at the trial transcript, and I'm looking at questions. Let's see. Mr. Fyfe, part of the claim here, Your Honor, is one of the defenses raised by the carrier is the defects were not manifested while the policy was in effect. And I'm trying to establish when did they become manifest to the homeowner? And that is an important part of the case. Court, it's not relevant. Now, how could the court's response, it's not relevant, be true? The court later says the homeowner failed to show when the problems were manifest. Well, that's what he's just cut off. He just said it wasn't relevant. So how can it both be relevant to the court's written decision but irrelevant during the course of the trial? And you're throughout here, Mr. Downey, objecting to every time he asks these questions. So I don't get it. Part of those objections is based on the fact that my client was precluded from presenting evidence because of plaintiff's motions in limine. We are tied. Our hands are tied. Plaintiff's hands are tied. They tied their own hands when they say we don't need to present evidence on property damage. We will proceed at trial based on the arbitration award alone because that has sufficient determinations to establish coverage. That sounds like a case of waiver. It sounds as though the plaintiffs then are waiving an opportunity to prove things. But that would be a very different basis for the district court's decision, and the district court didn't decide it on the grounds that the plaintiffs had waived the opportunity to provide evidence of manifestation. Well, that's an interpretation of the basis of his rulings on our objections at trial. He's objecting to evidence in the way it's framed and offered at trial. We're objecting to evidence in the way it's framed and offered at trial. The trial judge is making his determination on that basis. He doesn't say exactly the reason for it. But the only thing that we have in front of us is the judgment, which is supported by a written opinion. The written opinion says the Martinez's are incredible. They are not to be believed on the question of when the construction defects were manifest. And as to those questions, they were cut off every time they tried to answer the question. And in reviewing the trial court, he has discretion to make evidentiary rulings, and it must be prejudicial to the plaintiff. If the plaintiff conceded it's not prejudicial, then it's not. Slightly prejudicial. Not if he's conceded that he admitted all the evidence he offered. Well, I didn't understand that answer either. But I think that is relevant to the Court's inquiry, that we're dealing with a trial court's determination, and there would be no prejudice based on what we've heard. Okay, Mr. Downey. Thank you very much. Mr. Fife, a little extra time to equalize it out. To answer that question again, Mr. Fife, I asked you, did you get all the evidence in you wanted to get in regarding manifestation? As I understood your answer last time, it was yes, you got it all in. No, if I suggested that, then I misspoke. I didn't get in all the evidence I wanted to. That's why I was continuing to ask, and Judge Ruhl was saying, no, I've ruled counsel, that's irrelevant. I wanted to get in more. I wanted to go through all of the things. When did you first notice the mold? When did you first notice the horizontal cracks in the walls, which are evidence of settling of the house because of structural insufficiencies? My position is, what I did get in over the objections was sufficient in the absence of any other evidence to contradict that. That's my position. I would dearly like to have gotten a lot more in, but Judge Ruhl has a way when he tells you, I rule counsel, that you better not pushing too far. And I thought about it. Well, I've got at least the evidence that my clients first noticed the defects after they moved in, which was while the policy was in effect. I've heard nothing indicate that anyone else noticed the defects before then. And if anything, what has come in indicates that the contractor didn't think there were any defects and never relented from that position. While counsel talks about other papers and documents that the court had before it, I can't think of any documents in the record, and counsel certainly doesn't point to any, which suggests that these defects began to manifest themselves prior to March 28, 2003. There's just no paper that I can think of. And I was intimately familiar with the trial court and state court proceedings to that effect. And certainly Judge Ruhl did not, in his opinion, refer to any other documents that led him to reject the uncontradicted test, otherwise uncontradicted testimony of the homeowners. Judge Ruhl also makes clear in his opinion that he felt that we had the burden of proving the negative proposition, that is, that the defects had not become manifest prior to March 28. We do not have the burden to prove the negative proposition. The burden of proving that the defects became manifest before March 28 is a defense. That would have been up to the defendants to produce evidence to that effect if they had any, and they didn't. And so the, as I argue in the brief, what evidence I was allowed to get in, but not as much as I would have liked to, was sufficient in the absence of anything to contradict it. Uncontradicted testimony of the single witnesses is enough, and that certainly should surpass what is otherwise just ranked speculation by the judge. Thank you, Mr. Clay. Your time has expired. Thank you, Counsel. The matter just argued will be submitted.
judges: Quist, Rymer, Bybee